UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WILLIAM GRAY,<br><br>    Plaintiff,<br><br>v.<br><br>Warden TEREMA CARLIN, Deputy Warden of Security GALE MUNDER, Sergeants KRISTI LYNCH, DWAINE HASEROEHRL, BENJAMIN GUNN, SR., DUANE POWERS, CHRIS MANFULL, COLLEEN REED, Corporals JASON LICHTI, and RANDY HARTNETT, and Correctional Officers FRANK OLESEN, KATHY DAVIDSON, JACK FERNANDEZ, and CORRIE REED,<br><br>    Defendants. | Case No. 3:11-cv-00275-EJL<br><br>**MEMORANDUM DECISION AND ORDER** |

Plaintiff William Katlynn Gray, a prisoner in the custody of the Idaho Department of Correction (IDOC), is proceeding pro se and in forma pauperis in this civil rights action. Pending before the Court are Defendants' Motion for Summary Judgment (Dkt. 86), and several motions filed by Plaintiff, which include a motion for judicial settlement conference (Dkt. 83); motion for reconsideration (Dkt. 89); motion for court review of D.O.R. hearing (Dkt. 93); motion to strike (Dkt. 94); and motion to stay (Dkt. 100).

Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record and that the decisional process would not be significantly aided by oral argument. Accordingly, the Court will decide this matter on the record without oral argument. D. Idaho L. R. 7.1. For the reasons that follow, the Court concludes that there is no genuine dispute as to any material fact and that Defendants are entitled to judgment as a matter of law. Therefore, the Court will grant Defendants' Motion for Summary Judgment and Plaintiff's Motion for Court Review of D.O.R. Hearing. All other motions are denied as explained below.

## INTRODUCTION

At all times mentioned in the Amended Complaint, Plaintiff was housed in protective custody at the Idaho State Correctional Institution at Orofino (ICI-O). On April 7, 2011, Plaintiff was given a disciplinary offense report (DOR) for simple battery and placed in restrictive housing for ten days.

Plaintiff filed a Complaint alleging constitutional violation arising from the DOR. (Dkt. 3.) On November 17, 2011, the Court issued its first Initial Review Order under 28 U.S.C. § 1915A and allowed Plaintiff to go forward with certain claims. (Dkt. 8.) The Court then granted Plaintiff's request to amend his Complaint and issued a Second Initial Review Order. (Dkt. 31.) The Court found that Plaintiff had stated the following colorable claims for relief in his First Amended Complaint: (1) unconstitutional retaliatory conduct under the First Amendment based on certain Defendants' pursuit of a disciplinary offense report (DOR), confiscation of Plaintiff's property, and failure to adequately respond to his complaints of unsanitary and dirty cell, all of which were

allegedly motivated by a desire to retaliate against Plaintiff because he had previously filed grievances and lawsuits; (2) a substantive due process claim under the Fourteenth Amendment that the DOR was not supported by "some evidence"; (3) a procedural due process claim under the Fourteenth Amendment that the DOR disciplinary punishment, i.e., the unsanitary conditions of his cell, was a significant hardship on Plaintiff and that he had a liberty interest protected under the Due Process Clause; and (4) an Eighth Amendment claim that Plaintiff was subjected to cruel and unusual punishment because he was detained in a segregation cell that was contaminated with fecal matter and insects. (*Id.*)

## PLAINTIFF'S MOTION FOR SETTLEMENT

On May 9, 2014, Plaintiff filed a motion seeking an order requiring the parties to engage in a judicial settlement conference, or an alternative dispute resolution process. The Court has reviewed Plaintiff's rationale for filing his motion, which includes the lengthy nature of the case, numerous discovery motions hindering resolution, and the prospect of a third round of dispositive motions from Defendants. Defendants did not file a response, nor did they otherwise agree to proceed with ADR. Absent some evidence Defendants agree to participate in a judicial settlement conference, the Motion is denied.

## PLAINTIFF'S MOTION FOR RECONSIDERATION

Plaintiff's motion for reconsideration asks the Court to revisit its May 20, 2014 Order denying Plaintiff's second motion to compel. On January 21, 2014, the Court granted in part Plaintiff's First Motion to Compel and ordered Defendants to respond to Plaintiff's discovery requests. (Dkt. 78.) Plaintiff's second motion to compel asserted

Defendants did not comply with their discovery obligations. The Court reviewed the record, including the interrogatories and requests for production Plaintiff propounded as well as Defendants' answers, and determined Defendants fulfilled their obligations according to the terms of the Court's prior order. As to other interrogatories Plaintiff argued should have been answered but were not, the Court noted the record reflected that the numbered interrogatories Plaintiff referenced did not exist. The Court therefore denied Plaintiff's second motion to compel, and noted that the discovery period was closed. The Court ordered dispositive motions to be filed no later than July 3, 2014. Order, May 20, 2014 (Dkt. 85.) Plaintiff now argues Defendants lied; the Court applied the incorrect standard; and its analysis was wrong.

The Court has the "inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *City of Los Angeles v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) (internal quotation marks and emphasis omitted). Although courts have authority to reconsider prior orders, they "should be loath to do so in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) (quoting *Arizona v. California*, 460 U.S. 605, 618 n. 8 (1983)). Other "courts have distilled various grounds for reconsideration of prior rulings into three major grounds for justifying reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence or an expanded factual record; and (3) need to correct a clear error or to prevent manifest injustice." *Louen v. Twedt*, 2007 WL 915226 (E.D. Cal. March 26, 2007).

**MEMORANDUM DECISION AND ORDER - 4**

Plaintiff has not met his burden on any of these grounds. Accordingly, Plaintiff's Motion to Reconsider will be denied.

## PLAINTIFF'S MOTION TO STAY

Plaintiff's motion to stay, filed on July 28, 2014, requests the Court enter an order staying the proceedings relating to Defendants' summary judgment motion, which was filed on June 3, 2014, and under consideration here. Plaintiff contends the Court must resolve the pending discovery disputes prior to moving forward. Plaintiff further contends he did not receive responses to his requests for admissions, dated June 18, 2014.

Plaintiff brings his motion to stay pursuant to Fed. R. Civ. P. 56(d).[1] The rule states that if a party opposing summary judgment shows that "for specified reasons, he cannot present facts essential to justify his opposition" appropriate relief may be granted. However, "a Rule 56(f) motion must be supported by an affidavit which sets forth with particularity, the facts the moving party expects to discover and how those facts would create a genuine issue of material fact precluding summary judgment." *Harbert Internat'l, Inc v. James*, 157 F.3d 1271, 1280 (11th Cir. 1998). Plaintiff does not meet this standard for several reasons.

First, as explained above, the Court does not find grounds to continue these proceedings by reversing its prior orders regarding discovery. The Court noted in its May 20, 2014 Order that discovery was closed, and that no further extensions to any deadlines would be considered given the length of time the case had been pending. Defendants

---

[1] Rule 56(d) was formerly Rule 56(f). The differences between the two rules "are purely stylistic." *Nieves-Romero v. U.S.*, 715 F.3d 375, 381 n.3 (1st Cir. 2013).

therefore had no obligation to respond to discovery requests propounded after May 20, 2014.

Second, these proceedings were already stayed to allow for additional discovery. In its January 21, 2014 memorandum decision and order considering Plaintiff's first motion to compel discovery, Defendants' motion to dismiss, and Plaintiff's motion for summary judgment, the Court granted Plaintiff additional time within which to obtain discovery and deemed the pending dispositive motions moot to allow for renewed dispositive motions once the discovery was obtained. (Dkt. 78.) Plaintiff contends that cleaning logs he requested in his April 7, 2014, motion to compel would shed light on the cleaning procedures of the toilet that overflowed in his cell. But the cleaning procedures or logs are not relevant. The onus is on Plaintiff to demonstrate Defendants knew of the unsanitary conditions and did nothing. Plaintiff contends he informed prison staff about his cell conditions during his ten-day restrictive housing placement by submitting Kite forms complaining about his cell conditions. Plaintiff has been able to support his opposition to Defendants' motion for summary judgment by citing to grievance forms already in the record. Thus, the Court fails to see how additional time for discovery at this juncture would facilitate Plaintiff's presentation of his case. (*See* Pl. Disputed Facts at 2, Dkt. 91.1 at 2, citing to Ex. A, Dkt. 23; and Dkt. 44 and 60.) The Court has taken all of the evidence in the record into consideration.

Third, Plaintiff's contention that Defendants lied in their discovery responses by contending no plumbing standards exist is not a basis for reopening discovery. The Court cannot compel Defendants to produce documents that they assert do not exist. Although

Plaintiff may argue Defendants are lying, the Court must accept Defendants' assertions as officers of the Court. The Court will not revisit the discovery process because Plaintiff subjectively believes Defendants are lying.

Finally, Plaintiff's motion purports to set forth additional argument in opposition to Defendants' motion for summary judgment. As such, it is not properly brought. All arguments in opposition to Defendants' motion for summary judgment should be raised in the brief filed in opposition, not in additional motions or briefs. Dist. Idaho L. Rule 7.1.

Plaintiff's motion to stay will be denied.

## PLAINTIFF'S MOTION FOR COURT REVIEW OF D.O.R. HEARING

Plaintiff requests the Court consider the testimony presented during his Disciplinary Offense hearing. Defendants filed a notice of non-opposition to the motion and submitted an audio CD to the Court for review. (Dkt. 96.) The Court has reviewed the contents of the audio CD in its consideration of Defendants' motion for summary judgment and Plaintiff's opposition thereto. The motion will be granted.

## PLAINTIFF'S MOTION TO STRIKE

The Court has reviewed the motion to strike directed at the affidavits of Defendants Powers, Hasenoehrl, Whitesall, Anderson, Schweller, Bayer, Bybee, French, Gunn Jr., Gunn Sr., Marble, Martinez, Shriver, and Reed. Essentially, Plaintiff objects to the affidavits Defendants submitted in support of their motion for summary judgment. Plaintiff argues the affidavits are unsupported by any admissible evidence because the affiants have lied. Plaintiff further contends the affidavits contain statements that are

vague, hearsay, not based upon personal knowledge, irrelevant, and speculative. Plaintiff then proceeds to attack each affidavit with argument that attempts to dispute the facts stated therein, arguing that the statements are not true.

Rule 56(c)(2) permits a party to object to facts on the grounds that they cannot be presented in a form that would be admissible in evidence. Other than arguing the affiants have lied and setting forth additional argument in opposition to Defendants' summary judgment motion, Plaintiff has not demonstrated that the objectionable statements are inadmissible under the rules of evidence, or cannot be presented in a form admissible in evidence. If Plaintiff contests the facts stated in Defendants' affidavits, he may present those facts in support of his opposition to Defendants' motion, and the Court will give all facts appropriate consideration under the standards of Rule 56.

Plaintiff's motion to strike will therefore be denied.

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### 1.  Factual Background

This section includes facts that are undisputed and material to the resolution of the issues in this case. Where material facts are in dispute, the Court has included Plaintiff's version of facts, insofar as that version is not contradicted by clear documentary evidence in the record. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

On April 7, 2011 Plaintiff was housed in protective custody on unit A-1. Terema Carlin, the Warden of ICI-O, authenticated the activity log for the housing units in which Plaintiff was placed, and submitted the logs attached to her affidavit. Carlin Aff. Ex. A (Dkt. 86-5 at 8). The logs indicate that, at approximately 1810 on April 17, 2011, Plaintiff and another inmate, Ron Henry, became engaged in a fight on unit A-1. After the fight, both Plaintiff and Henry were taken to Restrictive Housing on unit A-3 by officers Powers and Olesen, and Plaintiff was held in cell number 145 on pre-hearing status. At the time Plaintiff entered the cell, he did not comment on the condition of the cell.

Plaintiff contends he submitted concern forms about his toilet on or about April 7, 2011, to Gunn Sr., Carlin, and Manfull. Three concern forms are indeed in the record, submitted by Plaintiff attached to his verified Amended Complaint.[2] A concern form dated April 7, 2011 and addressed to Sergeant Gunn, indicates that Plaintiff complained the cell he was in was "extremely dirty," because there were bugs and the toilet backs up, frequently depositing "water" on the floor. (Dkt. 23-2 at 8.) There is no staff signature acknowledging receipt.[3] A second concern form dated April 7, 2011, addressed to Warden Carlin indicated again that cell 145 of A-3 is full of bugs and the toilet "continually backs up." (Dkt. 23-2 at 22.) There is no staff signature acknowledging receipt. On April 10, 2011, a third concern form was submitted to "maintenance"

---

[2] Although Plaintiff did not submit an affidavit attaching the evidentiary support for his objection, the concern forms were cited to in Plaintiff's brief and attached to the Amended Complaint. The Court is not limited to only materials cited in an affidavit, and may consider other materials in the record, which it has done here. Fed. R. Civ. P. 56(c)(3).
[3] The concern form indicates that the concern forms are in triplicate. The pink part is returned to the offender after receiving staff's signature. The original (white) and yellow copy are forwarded to appropriate responding staff, who are to complete the reply field and return the yellow part to the offender. Plaintiff has not directed the Court to any explanation in the record why the first two concern forms were not acknowledged by prison staff.

complaining about the toilet in cell 145, which was "messed up" and "backing up." This form is signed by a staff member acknowledging receipt. (Dkt. 23-2 at 21.) Although Plaintiff's amended complaint describes "massive quantities of human waste" on the floor of his cell and no access to cleaning materials (Dkt. 23 at 9), these conditions were *not* included in the three concern forms Plaintiff submitted while residing in cell 145.

While housed in A-3, correction officers perform regular unit checks, and document their unit checks on the unit logs. The unit logs indicate that, during Plaintiff's stay in cell 145 of A-3, Officers Anderson, Gunn Jr., Powers, Bybee, Benson, Martinez, Whitesell, Davidson, Shriver, Bauer, Schweller, Mcintosh, French, Jones, Marble, and Gunn Sr., were assigned to perform unit checks, which were performed on average 8-10 times each full day. Additionally, the logs indicate two supervisor checks per day occurred. Finally, mental health clinician Gebhart made rounds to the inmate population housed in A-3.

According to Correctional Officers Gunn Jr., Powers, Benson, Witesell, Martinez, Davidson, McIntosh, Jones, and Marble, all of them performed unit checks and documented them on the Unit Logs during April 7 – 17, 2011. Each of them testified that during that period, they did not observe a malfunctioning toilet or feces on the floor of Plaintiff's cell, Plaintiff did not complain about those conditions, and they were not told by anyone else of any problem in Cell 145.

Correctional Sergeants Bauer, Schweller, Gunn Sr., and Bybee, and Correctional Lieutenants Shriver, French and Anderson, performed daily supervisory unit checks during April 7—17, 2011. During a supervisory unit check, the officers walk by each cell

so they are available to answer questions or receive complaints. During the period April 7 – 17, none of them recall observing a malfunctioning toilet or feces on the floor of cell 145, Plaintiff did not complaint to them of those conditions, and they were not aware of those conditions from other staff.

Mental Health Clinician Wendy Gebhart was also responsible for making rounds of the restrictive housing unit. Gebhart is responsible for maintaining restrictive housing status logs for each offender. According to Plaintiff's housing log, she saw Plaintiff on April 8, 11, and 15, and the meetings took place at Plaintiff's cell door where a conversation occurred. During those conversations, Plaintiff did not mention any problems with bugs or a malfunctioning toilet which overflowed and contaminated his cell with fecal matter. The status logs indicate also that Gray cleaned his cell on April 14, 2011.[4]

According to Warden Carlin, the prison is subject to a bug infestation every spring, and the presence of ants is common. Maintenance staff regularly sprays to control the ants. She was aware that Plaintiff was treated for bug bites with a topical hydrocortisone salve during his stay in unit A-3. Warden Carlin reviewed the logs, and noted that, during Plaintiff's ten-day stay in segregation, there was another cell available and, had Plaintiff requested to move due to the overflowing toilet, Plaintiff could have been moved. Warden Carlin personally inspected the unit on April 11, and did not see any indication of feces on the floor of cell 145 or an indication of a malfunctioning toilet,

---

[4] The initial filing of Gebhart's affidavit, filed at Docket 86-9, was missing the signature page and Exhibit A. On December 19, 2014, Defendants noted the omission and filed the complete affidavit with the previously missing pages. (Dkt. 105.)

and Plaintiff did not mention those conditions to her. Warden Carlin indicated that, had there been mention of an overflowing toilet and fecal matter on the floor of Plaintiff's cell, the unit log would have so indicated.

On May 5, 2011, *after* Plaintiff was released from cell 145, he submitted a grievance form complaining of feces on the floor and a bug infestation of cell 145 while he was housed there. Plaintiff references the three concern forms he sent on or about April 10, 2011. The grievance form indicates cleaning supplies were unavailable for a period of two days. Officer Kenneth Shriver responded on May 12, 2011, indicating Plaintiff was offered the ability to clean his cell on April 14, 2011, the cell was "fixed," and maintenance sprayed for ants. (Dkt. 86-14; 23-1.) The grievance form states in the response dated May 17, 2011, that ICI-O maintenance resolved the issue with the cell toilet. Plaintiff submitted a second grievance form, received on August 9, 2011, about inadequate cleaning supplies while housed on A-3. The comments indicate, once again, that cleaning supplies are offered to inmates housed on A-3 and delivered weekly. Lieutenant Shriver indicated also that cleaning supplies are available upon request. (Dkt. 86-14 at 2.) The grievance was denied. (Dkt. 23-1 at 16.)

Turning to the DOR hearing process, Warden Carlin testified an inmate is issued a DOR for a serious rule infraction and a hearing is held before a disciplinary hearing officer. According to IDOC policy, "some evidence" of the infraction is required for a finding of guilt. An inmate may appeal an adverse decision. When the DOR was first written by Officer Roberts, there was no evidence Plaintiff hit or attempted to hit inmate Henry during the altercation on April 7, 2011. The DOR account was based upon what

Roberts overheard while he was on the floor. (Dkt. 60-1 at 3.) The DOR was initially affirmed. But, because there was no evidence Plaintiff hit inmate Henry, the DOR was dismissed upon appeal. (Dkt. 44-2 at 9.) Sergeant Lynch re-wrote the DOR after reviewing the video recording of the incident. (Dkt. 60-1 at 5.) According to the revised DOR, "Inmate Gray jumped up and swung with his right fist at Inmate Henry" during the altercation. (Dkt. 86-5 at 73.) Operating Procedure 318.02.01001 allows for a DOR to be rewritten and reheard once if it was initially dismissed.

Sergeant Hasenoehrl acted as the hearing officer and conducted a hearing on April 12, 2011. According to the audio recording, Sergeant Hasenoehrl read Sergeant Lynch's DOR report into the record. (*See* DOR, Dkt. 60-1 at 3-7.) Plaintiff denied swinging at Henry, testifying that he "tried to pat him on the head or shoulder area," because he was relieved Henry no longer wanted Plaintiff's commissary. Sergeant Hasenoehrl found some evidence did exist confirming the allegations in the DOR. As sanctions, he imposed 10 days segregation and a credit of time served, with a release date of April 17, 2011. Plaintiff appealed and the finding was confirmed. (Dkt. 60-1 at 2.) At the conclusion of the hearing, Plaintiff demanded to state, for the record, that his toilet kept backing up and feces was on the floor of his cell. Sergeant Hasenoehrl then asked if there was feces on the floor, and Plaintiff denied that there was. When asked if he needed to move to another cell, Plaintiff can be heard on the CD saying, "yeah, yeah, yeah."[5] When asked if he had talked to the floor officers, Plaintiff stated he sent kites. Hasenoehrl can then be heard

---

[5] In Hasenoehrl's Affidavit, he stated that Gray denied "requesting a cell change" when asked if he needed to change cells. Although this statement contradicts what can be heard on the audio tape, the factual dispute is not material, for the reasons explained below.

saying to Plaintiff that if there was a problem, to talk to the floor officers and they would get it fixed. The hearing was then concluded. According to the unit logs, Plaintiff remained in Cell 145 until April 17, 2011.

Plaintiff next contends he was retaliated against for accessing the legal system to redress his grievances, and that he was placed in the dirty cell as punishment. Plaintiff did submit several additional grievances, once on March 30, 2011, (gender appropriate hairstyle concern); April 1, 2011 (concern about inmate Henry extorting food from him); another concern about inmate Gaytan for threats directed at Plaintiff (Gaytan was recommended to be moved); December 30, 2010 (property not being returned). (Dkt. 60-5 at 2-7.) The documents reflect that the grievances were addressed, and with respect to the property, the grievance indicates Plaintiff agreed with the property inventory upon its return to Plaintiff. (Dkt. 60-5 at 7.) Plaintiff further complains about being placed in a cell adjacent to another inmate while in unit A-3. The inmates were not placed in a cell together, however. Aff. of Gunn Sr. ¶ 4 (Dkt. 86-22 at 2.) Plaintiff alleges he was told by Officer Gunn Sr. not to "grieve stuff" or sound "litigious," which Officer Gunn Sr. denies. *Id.* ¶ 6 (Dkt. 86-22 at 3.)

**2.       Summary Judgment Standard**

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment rule "is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is not "a disfavored

procedural shortcut," but is instead the "principal tool[] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Rather, there must be no genuine dispute as to any material fact in order for a case to survive summary judgment. Material facts are those "that might affect the outcome of the suit." *Id*. at 248. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir. 1987).

The moving party is entitled to summary judgment if that party shows that each material fact cannot be disputed. To show that the material facts are not in dispute, a party may cite to particular parts of materials in the record, or show that the adverse party is unable to produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A) & (B). The Court must consider "the cited materials," but it may also consider "other materials in the record." Fed. R. Civ. P. 56(c)(3). The Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist*., 237 F.3d 1026, 1029 (9th Cir. 2001) (internal quotation marks omitted). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *So. Ca. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

If the moving party meets this initial burden, then the burden shifts to the opposing

party to establish that a genuine dispute as to any material fact actually does exist.

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986). The

existence of a scintilla of evidence in support of the non-moving party's position is

insufficient. Rather, "there must be evidence on which the jury could reasonably find for

the [non-moving party]." *Anderson*, 477 U.S. at 252.

Material used to support or dispute a fact must be "presented in a form that would

be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Affidavits or declarations submitted

in support of or in opposition to a motion "must be made on personal knowledge, set out

facts that would be admissible in evidence, and show that the affiant or declarant is

competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). If a party "fails to

properly support an assertion of fact or fails to properly address another party's assertion

of fact," the Court may consider that fact to be undisputed. Fed. R. Civ. P. 56(e)(2). The

Court will grant summary judgment for the moving party "if the motion and supporting

materials—including the facts considered undisputed—show that the movant is entitled

to it." Fed. R. Civ. P. 56(e)(3).

The Court does not determine the credibility of affiants or weigh the evidence set

forth by the non-moving party. Although all reasonable inferences that can be drawn

from the evidence must be drawn in a light most favorable to the non-moving party, *T.W.*

*Elec. Serv., Inc.*, 809 F.2d at 630-31, the Court is not required to adopt unreasonable

inferences from circumstantial evidence, *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th

Cir. 1988).

### 3. Section 1983 Standard

Plaintiff brings his claims under 42 U.S.C. § 1983, the civil rights statute. To succeed on a claim under § 1983, a plaintiff must establish a violation of rights protected by the Constitution or created by federal statute proximately caused by the conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Prison officials are generally not liable for damages in their individual capacities under § 1983 unless they personally participated in the alleged constitutional violations. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct.").

"A defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). This causal connection "can be established by setting in motion a series of acts by others, or by knowingly refusing to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury." *Id*. at 1207-08 (internal quotation marks, citation, and alterations omitted).

### 4. Plaintiff's Eighth Amendment Claim

The Eighth Amendment to the United States Constitution protects prisoners against cruel and unusual punishment. To state a claim under the Eighth Amendment, a

prisoner must show that he is "incarcerated under conditions posing a substantial risk of serious harm," or that he has been deprived of "the minimal civilized measure of life's necessities" as a result of Defendants' actions. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). An Eighth Amendment claim requires a plaintiff to satisfy "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012).

To meet the objective component of an Eighth Amendment Claim, the deprivation must be sufficiently "grave" or "serious." *Wilson v.* Seiter, 501 U.S. 294, 298 (1991). As to the subjective standard, a prison official acts with "deliberate indifference… only if the [prison official] knows of and disregards an excessive risk to inmate health and safety." *Gibson v. Cnty. of Washoe, Nev.*, 290 F.3d 1175, 1187 (9th Cir. 2002) (citation and internal quotation marks omitted). "Under this standard, the prison official must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Farmer*, 511 U.S. at 837).

Additionally, an inmate must state a sufficient degree of harm to establish an Eighth Amendment claim (more than *de minimis* but not necessarily significant). *Espinal v. Goord*, 2001 WL 476070 (D.N.Y. 2001) (citing eight cases); *see Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997) (having a sore, bruised ear for three days was *de minimis*); *Luong v. Hatt*, 979 F.Supp. 481 (D.N.Y. 1997) (cuts and scratches that lasted for two or three days were insufficient to satisfy physical injury requirement); *Mitchell v.*

*Philip Morris*, Inc., 2000 WL 1848085, at *7 (D. Ala. 2000) (headaches and shortness of breath did not satisfy § 1997e(e)); *Cain v. Commonwealth of Va.*, 982 F.Supp. 1132, 1135 & n.3 (D. Va. 1997) (unbearable headaches insufficient); *Pinkston-Bey v. DeTella*, 1997 WL 158343, at *3 (D. Ill. Mar 31, 1997) (severe headaches insufficient).

Beginning with the toilet, the undisputed material facts indicate prison officials did not act with deliberate indifference. Plaintiff submitted only three grievance forms during his stay in cell 145: two on April 7, and one on April 10, which described the toilet as being "messed up" and "backing up." Despite the Amended Complaint's description of the toilet as spewing feces and HIV-infected waste, there is no evidence in the record Plaintiff ever complained after April 10, 2011, to any of the officers on the floor of the unit. The unit was checked several times during each day. Plaintiff argues that the officers never looked through the window of his cell, and even if they did, they would have been unable to see anything because the glass was marred. However, although correctional officers may not have personally inspected each cell, they were available multiple times each day if there was a problem to report. Further, supervisors undertook a more thorough floor check. They actually walked by each cell so they could be available for questions and complaints. Additionally, the mental health clinician was physically available for an actual conversation three times during Plaintiff's stay on unit A-3. None of the correctional officers on the floor of the unit recall Plaintiff mentioning the conditions of his cell. Nor do the log notes indicate any problems within the unit or Plaintiff's cell. One would reasonably expect that a toilet spewing feces on the floor of one's cell would cause Plaintiff to complain or ask to be moved.

But, despite the level of contact with Plaintiff each and every day, Plaintiff's only verbal complaint about the feces on the cell floor to correctional officers occurred after the adverse disciplinary decision was levied against him on April 12. Yet, when asked if a problem existed with the toilet at that time, Plaintiff denied there was one. He was told to complain to the unit officers if there was an issue. Though Plaintiff stated he would like to move to another cell at the hearing, there is no evidence that the failure of officials to move Plaintiff was the result of deliberate indifference. Further, on April 15, 2011, mental health clinician Gebhart visited with Plaintiff, Plaintiff did not mention a problem with feces in the cell. Her log notes do not reflect that Plaintiff raised any issues with the conditions in his cell.

As previous noted, Plaintiff's concern forms, written on April 7 and 10, 2011, do *not* describe fecal matter on the floor of his cell. Rather, they describe the toilet "backing up"—not overflowing onto the floor and spewing "massive quantities of human waste" as Plaintiff describes in his Amended Complaint. And, the grievance forms indicate that, once officials were told of the malfunctioning toilet, the cell was "fixed," cleaning supplies were available if Plaintiff had asked, and Plaintiff did clean his cell on April 14, 2011—after the hearing in which he complained of the cell's conditions.

As for the ants, the evidence in the record indicates Defendants were aware of the ant infestation issue and that it occurred each spring. Prison records and officials indicated that unit A-3 was sprayed for ants, and Plaintiff was treated for bug bites during his stay on unit A-3. This evidence does not support a claim that officials were deliberately indifferent to the ants in Plaintiff's cell.

Viewing the facts and all reasonable inferences drawn therefrom in the light most favorable to Plaintiff, there exist no material issues of fact. There is no evidence from which a reasonable juror could infer that prison officials knew about a faulty toilet spewing human waste all over Plaintiff's cell, or that, once informed, they failed to take action. The same rings true for the ants. The lack of knowledge of any significant problem constituting a serious threat to Plaintiff's health or safety, or of ignoring it once told, precludes liability under the Eighth Amendment. Moreover, the bug bites for which Plaintiff was treated with a topical ointment are a *de minimis* injury, and Plaintiff alleged no injury or medical treatment necessary for his alleged exposure to the fecal matter. Summary judgment will therefore be granted to Defendants with respect to Plaintiff's Eighth Amendment claim.

**5.      Standard of Law Applicable to Fourteenth Amendment Claims**

Plaintiff was permitted to proceed with both a substantive and procedural due process claim, both of which are grounded in his disciplinary action for engaging in an altercation with another inmate. The substantive due process claim contends that the DOR was not properly supported, while the procedural due process claim asserts that the disciplinary punishment (his confinement in an unsanitary cell) was a significant hardship. Each will be discussed.

**A.      *Substantive Due Process***

A prisoner has a Fourteenth Amendment substantive due process right to be free from punishment which is arbitrary and capricious. *See Burnsworth v. Gunderson*, 179 F.3d 771 (9th Cir. 1999). Due process is violated when a prison disciplinary hearing

board convicts an inmate of an offense "at which no shred of evidence of the inmate's guilt" was presented, even if inmate demonstrated no cognizable liberty interest. *Id*. at 775. "The touchstone of due process is protection of the individual against arbitrary action of government." *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974). In a prison disciplinary setting, "the requirements of due process are satisfied if some evidence supports the decision" of the hearing officer. *Superintendent Massachusetts Corr. Inst'n, Walpole v. Hill*, 472 U.S. 445, 455 (1985). The standard "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of evidence." *Hill*, 472 U.S. at 455. Rather, the relevant inquiry centers on whether "there is any evidence in the record that could support the conclusion reached." *Id*. at 455–56.

Here, DHO Hasenroehl relied upon the second DOR report of Sergeant Lynch and her credibility to make his finding as to the charge Plaintiff struck inmate Henry. Plaintiff first argues the process of submitting a second DOR was counter to IDOC policy. However, IDOC policy allows a DOR to be rewritten and reheard once after an initial dismissal. Here, the DOR was rewritten because the officers initially had only the audio of the incident. But, the video of the incident supported the second DOR report. The digital recording viewed by Sergeant Lynch, and her description of what she saw depicted in the video, constitutes "some evidence" that Plaintiff committed the offense found by the hearing officer.

Even if Plaintiff's version of events is credited and Plaintiff was attempting to pat inmate Henry, there is still "some evidence" that Plaintiff was involved in a fight with another inmate. The assault occurred within that context. Regardless of which offense

(assault or battery), there is some evidence Plaintiff committed an offense, and the resulting sanction is the same. Consequently, summary judgment is properly granted to Defendants.

**B.** *Procedural Due Process*

A prisoner possesses a liberty interest under the federal constitution when a change occurs in confinement that imposes an "atypical and significant hardship ... in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484, (1995). In *Sandin*, the Supreme Court examined whether a prisoner had a liberty interest in not being confined in disciplinary segregation. There, the Court held that, to determine whether there is such a liberty interest, a court must analyze three factors: (1) whether disciplinary segregation was essentially the same as discretionary forms of segregation [such as administrative segregation]; (2) whether a comparison between the plaintiff's confinement and conditions in the general population showed that the plaintiff suffered no "major disruption in his environment;" and (3) whether the length of the plaintiff's sentence was affected. *Id.*, 515 U.S. at 486–87. If these factors are not met, there is no liberty interest in not being placed in disciplinary segregation, which results in a prisoner not being entitled to sue prison officials for due process violations arising from the disciplinary hearing.

The evidence discussed above with respect to Plaintiff's Eighth Amendment claim applies with equal force here. The undisputed material facts indicate Plaintiff was not housed in a dirty cell, and Plaintiff was given cleaning supplies or had access to them upon request. Further, he was treated for ant bites in a timely fashion. Neither discomfort

is anything more than de minimis. Plaintiff has not presented sufficient facts from which a reasonable jury could conclude otherwise, and he cannot meet the second factor mentioned above. Further, there is no evidence Plaintiff's prison sentence was affected.

Defendants' motion for summary judgment on Plaintiff's substantive due process claim will therefore be granted.

## 6.    First Amendment Claim

In his Amended Complaint, Plaintiff contends Defendants engaged in retaliatory conduct under the First Amendment based on certain Defendants' pursuit of the DOR, confiscation of Plaintiff's property, housing him next to an inmate he did not like, and failure to adequately respond to his complaints of unsanitary and dirty cell, all of which were allegedly motivated by a desire to retaliate against Plaintiff because he had previously filed grievances and lawsuits.

A First Amendment retaliation claim must allege the following: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, ... that such action (4) chilled the inmate's exercise of her First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005) (footnote omitted). Although a "chilling effect on First Amendment rights" is enough to state an injury, *Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001), "bare allegations of arbitrary retaliation" are insufficient to state a retaliation claim. *Rizzo v. Dawson*, 778 F.2d 527, 532 n .4 (9th Cir. 1985). And, while the timing of an official's action can be circumstantial evidence of retaliation, there must generally be something more than

simply timing to support an inference of retaliatory intent. *See Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995).

Moreover, not every retaliatory act taken by a prison official can be considered an adverse action that chills the exercise of protected speech. The proper inquiry in determining whether a plaintiff has stated a viable retaliation claim "asks whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." *Mendocino Envt'l Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir. 1999) (internal quotation marks omitted). If it would not, then "the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection." *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) (internal quotation marks omitted). *See also Morris v. Powell*, 449 F.3d 682, 686 (5th Cir.2006) ("The [*de minimis* ] standard achieves the proper balance between the need to recognize valid retaliation claims and the danger of federal courts embroiling themselves in every disciplinary act that occurs in state penal institutions.") (internal quotation marks and alteration omitted); *ACLU of Maryland, Inc. v. Wicomico County*, 999 F.2d 780, 786 n. 6 (4th Cir. 1993) (per curiam) ("[T]hese § 1983 plaintiffs suffered no more than a *de minimis* inconvenience and ..., on the facts of this case, such inconvenience does not constitute cognizable retaliation under the First Amendment.").

Plaintiff has not brought forth any evidence tending to raise a genuine issue of fact as to any Defendants' intent. Plaintiff provides no support in his response brief, and the materials cited do not advance any facts indicating any particular Defendant took action on account of Plaintiff's protected conduct.

Rather, the evidence in the record does establish that Sergeant Gunn Sr. placed Plaintiff in a cell adjacent to inmate Nigro, whom Plaintiff did not like, as a matter of mere coincidence. Gunn also denies telling Plaintiff not to grieve matters or discouraging Plaintiff from pursuing the grievance system. Though Plaintiff disputes Gunn's statement, this dispute is not genuine. Contrary to Plaintiff's contention regarding alleged official interference with his grievance activity, it is abundantly clear from the record before the Court that Plaintiff took full advantage of the grievance system. (*See* exhibits attached to Amended Complaint, Dkt. 23). Plaintiff submitted concern forms about the toilet, asked for medical treatment for his bug bites, and appealed both DORs, among other grievance activities.

There are other concern forms in the record that Plaintiff alleges Defendants did not address, such as the concern form asking not to be placed near inmate Henry. (Dkt. 23-2 at 5.) But there is no evidence Plaintiff suffered any adverse action at the hands of any Defendant as a result of that concern form. Next, there is no evidence Plaintiff was purposefully placed in an unsanitary cell as a consequence of the DOR. Finally, as to Plaintiff's legal papers, the evidence in the record does indicate some papers were removed from Plaintiff's possession, but that Plaintiff signed an acknowledgment of receipt upon return of the paperwork taken. (Dkt. 60-5 at 7.)

Even if all of Plaintiff's allegations were true and he could establish Defendants' retaliatory motives, such minimally annoying actions are not so adverse that they would "chill or silence a person of ordinary firmness from future First Amendment activities." *Mendocino Envt'l Ctr.*, 192 F.3d at 1300.

Plaintiff has failed to rebut Defendants' showing that there is no genuine dispute as to any material fact with respect to Plaintiff's First Amendment claim.

## CONCLUSION

Plaintiff has not shown any genuine dispute as to any of the material facts. Defendants' motion for summary judgment will be granted, and this case will be dismissed with prejudice.

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1.     Plaintiff's Motion for Judicial Settlement Conference (Dkt. 83) is **DENIED**.

2.     Defendants' Motion for Summary Judgment (Dkt. 86) is **GRANTED**.

3.     Plaintiff's Motion for Reconsideration (Dkt. 89) is **DENIED**.

4.     Plaintiff's Motion for Court Review of D.O.R. Hearing (Dkt. 93) is **GRANTED**.

5.     Plaintiff's Motion to Strike (Dkt. 94) is **DENIED**.

6.     Plaintiff's Motion to Stay (Dkt. 100) is **DENIED**.

7.     A review of Plaintiff's litigation history reveals that Plaintiff has, on at least three prior occasions, filed civil actions in forma pauperis that have been dismissed for failure to state a claim upon which relief may be granted. *See Gray v. Valdez*, Case No. 3:10-cv-00231-REB (Dkt. 11); *Gray v. Carlin*, Case No. 3:11-cv-00598-EJL (Dkt. 11); *Gray v. Johnson*, Case No. 3:11-cv-00002-BLW (Dkt. 61). Therefore, Plaintiff is no longer allowed to file a

civil action or a civil appeal in forma pauperis, but rather must pay the full

amount of the filing fee. 28 U.S.C. § 1915(g). Accordingly, Plaintiff's in

forma pauperis status is **REVOKED** for purposes of any appeal of this

Order. Any further request to proceed in forma pauperis on appeal should

be directed on motion to the United States Court of Appeals for the Ninth

Circuit in accordance with Rule 24 of the Federal Rules of Appellate

Procedure.

DATED: January 6, 2015

Edward J. Lodge
United States District Judge